SEALED

FILED
MAY 09 2012
Phil Lombardi, Clerk
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. __12 CR 086 CVE__ |
| Plaintiff, | ) | **FILED UNDER SEAL** |
| v. | ) | **INDICTMENT** |
| CHARLES NEALE PUCKETT, | ) | [21 U.S.C. § 846: Conspiracy; Forfeiture Allegation: 21 U.S.C. § 853(a) - Drug Forfeiture] |
| Defendant. | ) | |

**THE GRAND JURY CHARGES:**

Beginning sometime in June 2010, the exact date being unknown to the Grand Jury, and continuing to on or about February 10, 2012, in the Northern District of Oklahoma and elsewhere, **CHARLES NEALE PUCKETT**, the defendant herein, and co-conspirators known and unknown to the Grand Jury, did knowingly and intentionally combine, conspire, confederate and agree, each with the other, to commit the following offenses against the United States:

### OBJECTS OF THE CONSPIRACY

The objects of the conspiracy were:

1. To possess with intent to distribute a mixture or substance containing a detectable amount of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(C); and

2. To distribute a mixture or substance containing a detectable amount of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), and 841(C).

## MEANS AND METHODS OF THE CONSPIRACY

The objects of the conspiracy were to be accomplished by the following means and methods:

1. The defendant, **CHARLES NEALE PUCKETT** ("defendant **PUCKETT**") would and did arrange for, coordinate and orchestrate the transportation of drugs, namely marijuana, and specifically "hydroponic" (medical-grade) marijuana, a Schedule I controlled substance, through a drug trafficking organization ("DTO") from source locations in California to the Northern District of Oklahoma and elsewhere.

2. Defendant **PUCKETT** and the DTO would and did utilize the interstate highway system, located within the Northern District of Oklahoma and elsewhere, to transport marijuana from California to the Northern District of Oklahoma.

3. Defendant **PUCKETT** and the DTO would and did utilize the interstate highway system, located within the Northern District of Oklahoma and elsewhere, to transport large amounts of currency from the Northern District of Oklahoma to California in order to purchase and pay for marijuana.

4. Defendant **PUCKETT** and the DTO would and did use couriers ("mules") to transport marijuana from California to the Northern District of Oklahoma, specifically Rose, Oklahoma.

5. The co-conspirators herein would and did transport the marijuana from Rose, Oklahoma to Tulsa, Oklahoma for subsequent distribution.

## **OVERT ACTS**

To effect and further the objects of the conspiracy, defendant **PUCKETT** and other co-conspirators, both known and unknown to the Grand Jury, committed various acts in the Northern District of Oklahoma and elsewhere, among which were the following:

1. In or about June 2010, the exact date being unknown to the Grand Jury, defendant **PUCKETT** provided without payment or "fronted" approximately three (3) pounds of "hydroponically" grown marijuana to a person known to the Grand Jury ("Co-Conspirator A"), for subsequent distribution within the Northern District of Oklahoma.

2. In or about June 2010, the exact dates being unknown to the Grand Jury, Co-Conspirator "A" distributed approximately three (3) pounds of hydroponic marijuana in the Northern District of Oklahoma for defendant **PUCKETT** and the DTO.

3. In or about June 2010, the exact dates being unknown to the Grand Jury, Co-Conspirator "A" paid to defendant **PUCKETT** approximately $15,000 in cash, for the three (3) pounds of hydroponic marijuana that **PUCKETT** had fronted to him.

4. In or about July 2010, the exact dates being unknown to the Grand Jury, defendant **PUCKETT** fronted approximately seven (7) pounds of hydroponic marijuana to Co-Conspirator "A", for subsequent distribution within the Northern District of Oklahoma.

5. In or about July 2010, the exact dates being unknown to the Grand Jury, Co-Conspirator "A" distributed approximately seven (7) pounds of hydroponic marijuana in the Northern District of Oklahoma for defendant **PUCKETT** and the DTO.

6. In or about July 2010, the exact dates being unknown to the Grand Jury, Co-Conspirator "A" paid to defendant **PUCKETT** approximately $35,000 in cash, for the seven (7) pounds of hydroponic marijuana that was previously fronted to him.

7. In or about August 2010, the exact dates being unknown to the Grand Jury, defendant **PUCKETT** fronted approximately ten (10) pounds of hydroponic marijuana to Co-Conspirator "A", for subsequent distribution within the Northern District of Oklahoma.

8. In or about August 2010, the exact dates being unknown to the Grand Jury, Co-Conspirator "A" distributed approximately ten (10) pounds of hydroponic marijuana in the Northern District of Oklahoma for defendant **PUCKETT** and the DTO.

9. In or about August 2010, the exact dates being unknown to the Grand Jury, Co-Conspirator "A" paid to defendant **PUCKETT** approximately $50,000 in cash, for the ten (10) pounds of hydroponic marijuana that had previously been fronted to him.

10. In or about September 2010, the exact dates being unknown to the Grand Jury, defendant **PUCKETT** fronted approximately twenty (20) pounds of hydroponic marijuana to Co-Conspirator "A", for subsequent distribution within the Northern District of Oklahoma.

11. In or about September 2010, the exact dates being unknown to the Grand Jury, Co-Conspirator "A" distributed approximately twenty (20) pounds of hydroponic marijuana in the Northern District of Oklahoma for defendant **PUCKETT** and the DTO.

12. In or about September 2010, the exact dates being unknown to the Grand Jury, Co-Conspirator "A" paid to defendant **PUCKETT** approximately $100,000 in cash, for the twenty (20) pounds of hydroponic marijuana that had previously been fronted to him.

13. In or about October 2010, the exact dates being unknown to the Grand Jury, defendant **PUCKETT** fronted approximately twenty (20) pounds of hydroponic marijuana to Co-Conspirator "A", for subsequent distribution within the Northern District of Oklahoma.

14. In or about October 2010, the exact dates being unknown to the Grand Jury, Co-Conspirator "A" distributed approximately twenty (20) pounds of hydroponic marijuana in the Northern District of Oklahoma for defendant **PUCKETT** and the DTO.

15. In or about October 2010, the exact dates being unknown to the Grand Jury, Co-Conspirator "A" paid to defendant **PUCKETT** approximately $100,000 in cash, for the twenty (20) pounds of hydroponic marijuana that had previously been fronted to him.

16. In or about November 2010, the exact dates being unknown to the Grand Jury, defendant **PUCKETT** fronted approximately twenty-five (25) pounds of hydroponic marijuana to Co-Conspirator "A", for subsequent distribution within the Northern District of Oklahoma.

17. In or about November 2010, the exact dates being unknown to the Grand Jury, Co-Conspirator "A" distributed approximately twenty-five (25) pounds of hydroponic marijuana in the Northern District of Oklahoma for defendant **PUCKETT** and the DTO.

18. In or about November 2010, the exact dates being unknown to the Grand Jury, Co-Conspirator "A" paid to defendant **PUCKETT** approximately $125,000 in cash, for the twenty-five (25) pounds of hydroponic marijuana that had previously been fronted to him.

19. In or about December 2010, the exact dates being unknown to the Grand Jury, defendant **PUCKETT** fronted approximately twenty-five (25) pounds of hydroponic marijuana to Co-Conspirator "A", for subsequent distribution within the Northern District of Oklahoma.

20. In or about December 2010, the exact dates being unknown to the Grand Jury, Co-Conspirator "A" distributed approximately twenty-five (25) pounds of hydroponic marijuana in the Northern District of Oklahoma for defendant **PUCKETT** and the DTO.

21. In or about December 2010, the exact dates being unknown to the Grand Jury, Co-Conspirator "A" paid to defendant **PUCKETT** approximately $125,000 in cash, for the twenty-five (25) pounds of hydroponic marijuana that had previously been fronted to him.

22. In or about January 2011, the exact dates being unknown to the Grand Jury, defendant **PUCKETT** fronted Co-Conspirator "A" and another person known to the Grand Jury ("Co-Conspirator B"), between twenty-five (25) and twenty-seven (27) pounds of hydroponic marijuana for subsequent distribution in the Northern District of Oklahoma.

23. In or about January 2011, the exact dates being unknown to the Grand Jury, Co-Conspirator "A" and Co-Conspirator "B" distributed between twenty-five (25) and

twenty-seven (27) pounds of hydroponic marijuana in the Northern District of Oklahoma for defendant **PUCKETT** and the DTO.

24.   In or about January 2011, the exact dates being unknown to the Grand Jury, Co-Conspirator "A" paid to defendant **PUCKETT** approximately $125,000 in cash, for the twenty-five (25) to twenty-seven (27) pounds of hydroponic marijuana that had previously been fronted to him.

25.   In or about February 2011, the exact dates being unknown to the Grand Jury, defendant **PUCKETT** fronted Co-Conspirator "A" and Co-Conspirator "B" between twenty-five (25) and twenty-seven (27) pounds of hydroponic marijuana, for subsequent distribution within the Northern District of Oklahoma.

26.   In or about February 2011, the exact dates being unknown to the Grand Jury, Co-Conspirator "A" and Co-Conspirator "B" distributed between twenty-five (25) and twenty-seven (27) pounds of hydroponic marijuana in the Northern District of Oklahoma for defendant **PUCKETT** and the DTO.

27.   In or about February 2011, the exact dates being unknown to the Grand Jury, Co-Conspirator "A" paid to defendant **PUCKETT** approximately $125,000 in cash, for the twenty-five (25) to twenty-seven (27) pounds of hydroponic marijuana that had previously been fronted to him.

28. In or about early March 2011, the exact date being unknown to the Grand Jury, defendant **PUCKETT** fronted Co-Conspirator "A" five (5) pounds of hydroponic marijuana for subsequent distribution within the Northern District of Oklahoma.

29. On or about March 10, 2011, Co-Conspirator "A" and Co-Conspirator "B" were in possession of over a pound of hydroponic marijuana, that was previously fronted to them by defendant **PUCKETT**, for distribution in the Northern District of Oklahoma.

30. On or about February 10, 2012, the defendant **PUCKETT**, was in possession of approximately two (2) pounds of hydroponic marijuana while transporting it to Tulsa, Oklahoma for subsequent distribution.

31. Between August 2011 and December 2011, the exact dates being unknown, defendant **PUCKETT** approached Co-Conspirator "A", and another person known to the Grand Jury, in an attempt to recruit Co-Conspirator "A" to sell hydroponic marijuana for him and the DTO.

All in violation of Title 21, United States Code, Section 846.

## FORFEITURE ALLEGATION
## [21 U.S.C. § 853(a)]

The allegations contained in this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 21, United States Code, Section 853(a).

Upon conviction of the marijuana conspiracy alleged in this Indictment, as part of his sentence, the defendant, **CHARLES NEALE PUCKETT**, shall forfeit to the United States any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of such conspiracy and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of the conspiracy. A criminal forfeiture money judgment shall also be entered in a sum of at least $800,000 in United States Currency, representing proceeds of the conspiracy.

Pursuant to Title 21, United States Code, Section 853(p), the defendant shall forfeit substitute property, up to the value of the property described above if, by any act or omission of the defendant, the property described above, or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished

in value; or has been commingled with other property which cannot be divided without difficulty.

All in accordance with Title 21, United States Code, Section 853(a).

| | |
|---|---|
| THOMAS SCOTT WOODWARD<br>UNITED STATES ATTORNEY | A TRUE BILL |
| ROBERT T. RALEY<br>Assistant United States Attorney | /s/Grand Jury Foreperson<br>Grand Jury Foreperson |